## CHESTER-POLLARD AMUSEMENT CO., Inc., v. KENTUCKY DERBY CO., Inc., et al.

(Circuit Court of Appeals, Second Circuit. February 17, 1923.)

### No. 121.

1. Patents ⬚328—1,203,852, for game of skill, held valid, but not infringed.

The Clorius patent, No. 1,203,852, for a game of skill, *held* valid, but not infringed.

2. Patents ⬚328—1,368,115, for an amusement apparatus, held valid, but not infringed.

The Chester patent No. 1,368,115, for an amusement apparatus, *held* valid, but not infringed.

Appeal from the District Court of the United States for the Southern District of New York.

Suit in equity by the Chester-Pollard Amusement Company, Inc., against the Kentucky Derby Company, Inc., and Arnold Neble, with counterclaim by defendants. Decree for complainant, and dismissing counterclaim, and defendants appeal. Modified.

### Memorandum of Court Below.

Plaintiff sues in usual form on Chester patent 1,368,115, while defendants, without admitting infringement of the Chester patent if valid, sue by counterclaim on Clorius patent 1,203,852, which patent is admittedly prior to Chester patent and is said to be infringed, not by any device made strictly in accordance with Chester's disclosure, but by the commercial apparatus which the patentee and his assignee, the plaintiff, have made, used, and sold.

Similarly plaintiff does not, and of course cannot, assert that anything made strictly in compliance with the disclosure of Clorius' prior patent infringes the Chester patent, but it is asserted that defendants, perceiving the advantages of the Chester device and its attractive novelty over Clorius (which when new had obtained marked success), proceeded to imitate Chester.

Both Clorius and Chester spent their inventive thought over what each of them calls "an amusement device," that is, a catch-penny affair intended to be set up at places like Coney Island and Asbury Park for the purpose

⬚For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

of attracting patrons each of whom is charged a small fee to "show his skill" in bursting a balloon or by actuating the effigy of a race horse along a track, or the like, to the end that the most skillful manipulator may get a prize, presumably of greater value than the fee he paid to enter the so-called contest.

I cannot think that an "amusement device" is patentable merely because it amuses, much less because the process of amusing the public is profitable. Therefore I regard all the patents brought to the attention of the court herein merely as mechanical devices, though I pay some attention to the fact (plainly enough proven) that the defendant has put out a machine for bursting balloons solely because the plaintiff was the first person to attract and amuse a foolish public by doing the same thing with a machine requiring "skill." Nor does it make any difference that the plaintiff's balloon burster simulates an aerodrome, while defendants' balloons are when distended the heads of dancing or gesticulating manikins. These are but the attribute of the "show business," and I disregard them wholly in considering the patent question which is the only question at bar.

It is clear that the Kentucky Derby Company is entirely controlled by Mr. Neble, and it is also proven that the latter has himself personally used (if he has not caused to be made and sold) the alleged infringing devices. Therefore he is a proper defendant.

I believe the evidence that Mr. Neble examined Chester's balloon burster, that he expressed the opinion that it was the only amusement device that he had seen which did not infringe his Kentucky Derby patent, and I find that he thereupon simulated the amusement features of Chester's apparatus as soon as he could. I am also of opinion that he simulated the mechanism which an examination of Chester's apparatus revealed to him.

It needs no citation of authority to hold that as against a plain copyist a patent may be more generously construed in favor of the patentee than would be proper where the lines of action of persons wholly independent of each other happened to cross. This observation is made although I do not think that this case requires application of the doctrine referred to.

The essential inventive thought in Chester's patent is that the "fluid pressure" shall be subject to "controlling means controlled by the hand-operated member."

But an examination of Chester's disclosure proves that his controlling means consist essentially in breaking the connection between the power of the hand and the pump which furnishes the liquid pressure whenever the handle is revolved too rapidly; and the reason why the revolution of the handle no longer pumps is found in the governor, which (so to speak) diverts the pumped air from (for instance) a balloon.

The disclosed mechanical operation is very simple, a description of it would be of no value; it is sufficient to state my conclusion, viz. that the prior art does not display any other mechanical combination or arrangement producing Chester's result.

I may note here that it seems to me quite immaterial that Chester's patent discloses no means of simultaneously relieving all the unburst balloons when a so-called contest is ended, by the bursting of one of them. This necessarily follows from my view of all the patents considered, viz. that as producers of amusement I care nothing for them, they are to be regarded merely as mechanical devices; and Chester's mechanical device is complete, and completely disclosed when the art of bursting a single balloon is comprehended.

I think it also perfectly immaterial that in any balloon-bursting apparatus a puncturing pin may be rigged so as to prick a balloon at a predetermined degree of inflation. This is a mere adjunct, designed only to terminate inflation at a certain size. Invention resides in the scheme (with more or less rapidity) of getting the balloon to the puncturing point.

If the Chester patent is to be restricted to a device which prevents due and regular inflation through the operation of a bleed valve, defendants' actual apparatus does not infringe.

Undoubtedly, however, claims 1, 2, and 6 will read upon defendants' alleged infringement. Therefore the question is whether defendant is within

a reasonable range of equivalents having regard to the prior art and common knowledge.

Defendants use the fly-ball governor of Chester's patent, but use it to wholly sever connection between his hand wheel and his pump, whereas, the function of Chester's fly-ball governor is to bring a bleed valve into operation; the connection between hand wheel and pump is never severed.

I think that Chester's patent is a pioneer in the use of mechanically compressed air for the purpose indicated; that under such circumstances he is entitled to a range of equivalents which will make defendants' putting of his own pump out of action by disconnecting a clutch, by means of a governor, the equivalent of Chester putting his pump out of useful action by bleeding it, also by means of a 'governor.

On this ground I find the defendants infringe.

I have not overlooked defendants' very careful and indeed able argument based upon the file wrapper, but am not thereby persuaded that Chester is debarred from occupying the position of a pioneer in a field commercially rather wide, whatever one may think of its social utility.

It is impossible for me not to feel that the counterclaim in this suit is an afterthought, and indeed something like a smoke-screen. The Clorius patent is a very clever and ingenious mechanical contrivance; it is in its way as much of a pioneer as Chester, although Woods and others had at an earlier date disclosed and put out mechanical racers.

From the "amusement" standpoint it is quite possible to say that there is considerable resemblance between Clorius and Chester, in that both have "critical speeds," which when steadily maintained produce results at a distance, and the results are amusing. But from the mechanical standpoint there is to my mind no resemblance whatever between Clorius' means of accomplishment and those of Chester.

It is undeniable that some of Clorius' claims will verbally read on Chester, or rather on Chester's commercial device. Of this, Clorius' claim 36 is an example; but such correspondence can only be declared by saying that when Clorius claims "means connected with said units to cause the same to travel along the course at a speed which is determined by the speed of operation of said hand-operated means," he is entitled to cover by these words the air pipes and connections, etc., of Chester's pneumatic device.

If claims could be construed in this manner, patentable invention would cease.

The counterclaim is dismissed, and the plaintiff awarded a decree, with costs.

Ivan E. A. Konigsberg, of New York City (Henry J. Lucke, of New York City, and Harold E. Stonebraker, of Rochester, N. Y., of counsel), for appellants.

Munn, Anderson & Munn, of New York City (T. Hart Anderson, of New York City, of counsel), for appellee.

Before ROGERS, MANTON, and MAYER, Circuit Judges.

MAYER, Circuit Judge. Plaintiff is the owner of United States letters patent No. 1,368,115 to Frank R. Chester, dated February 3, 1921, for "amusement apparatus." Defendant Kentucky Derby Company, Inc., is the owner of United States letters patent to A. V. and O. T. Clorius No. 1,203,852 dated November 7, 1916, for "game of skill." Defendant Neble is president of defendant company.

Plaintiff filed a bill of complaint against defendant alleging infringement of claims 1, 2, and 6 of the Chester patent.

Defendant Kentucky Derby Company, after the usual denials, alleged as a counterclaim the infringement by plaintiff of the claims of the Clorius patent, and defendant Neble answered denying liability.

The District Court filed its decree holding the Chester patent valid and (1) that defendants infringed claims 1, 2, and 6 thereof, and (2) that plaintiff did not infringe the Clorius patent, and (3) therefore that the counterclaim should be dismissed.

The decree did not specifically hold the Clorius patent valid, but, after examining the opinion and the wording of the decree, it is plain that the District Court assumed that the claims of the Clorius patent were valid.

This case does not involve any debatable question of law nor any mechanical nor scientific problem requiring extensive exposition.

Both devices were designed to appeal to a public which enjoys a certain type of amusement furnished by operation of these contrivances. Clorius was first in the field with toy horse racing, held by the New York courts not to be unlawful. Chester followed with toy balloons. As this balloon game became popular, defendant company, as one of its devices, substituted balloons for horses. Hence this lawsuit.

We are concerned only with the features of the controversy which relate to the mechanism used and, as pointed out by the District Court, the amusement features make no difference. Clorius and Chester can each race toy horses or explode toy balloons at will, if the respective patents, as defined in the claims, are different from the patent standpoint.

[1] We agree with the District Court in holding that plaintiff does not infringe the claims of the Clorius patent and, in order to remove any doubt as effecting future litigations, if any, we hold the Clorius patent valid.

[2] We also agree that the Chester patent is valid.

Our sole disagreement with the District Court is that, owing to a different mental concept, we look at the Chester patent as narrower than held to be by the District Court, and, hence we think, that claims 1, 2, and 6 of the Chester patent were not infringed by defendants.

We think, among other reasons, that the file wrapper prevents the allowance to Chester of the range of equivalents necessary to find infringement in the case at bar.

The Chester patent may be typified by claim 1, which reads:

"An amusement apparatus, comprising a hollow fragile object adapted to be demolished by the action of fluid pressure, a fluid pressure generating means having a hand-operated member and arranged to generate fluid pressure for demolishing the said object, and controlling means controlled by the said hand-operated member and controlling the generated fluid pressure."

Thus claim 1 of Chester is limited to "controlling means controlled by the said hand-operated member and controlling the generated fluid pressure." The word "generated" defines what the Chester patent is intended to do, namely, to control the pressure after it is generated, or, in other words, to maintain constantly a generated pressure, and to control such pressure at some point between the pump which generates it and the balloon.

Defendants' machine does not maintain a constant generated pressure, because when the critical speed of the hand wheel is exceeded in

defendants' machine, the pump stops operating. Thus, defendants' machine unclutches the pump or motor element. Plaintiff's invention consisted in letting the pump run continuously with the hand wheel and placing a bleed valve or some other means between the pump and the balloon to effect changes in the speed of inflation of the balloon.

Claim 2 is limited to "controlling the flow of the fluid pressure from the said fluid pressure supply means to the said hollow fragile object." Defendants' machine does not control the flow of fluid pressure from the fluid pressure supply means to the hollow fragile object, because defendants' machine stops the operation of the fluid pressure supply means, and during such stoppage, there is no flow from the fluid pressure supply means to the balloon.

Claim 6 is restricted to "controlling the flow of the compressed air from the air pump into the said object." The Chester patent contemplates compressing air continuously while the hand wheel is turned, and permitting a greater or less amount of such compressed air to flow to the balloon. Defendants' machine does not compress the air continuously, but, when the critical speed of the hand wheel is exceeded, the pump stops and there is no compression during the interval.

Decree modified, as indicated, with half costs in this court and in the District Court.